GLENN, Trusteee of FAHNESTOCK, *vs.* CHARLES W. KARTHAUS.—*December,* 1832.

On the 4th of September, 1818, F, a resident of the city of *Baltimore,* applied to the Commissioners of Insolvent Debtors, under the act of 1816, *ch.* 221, for relief. A provisional trustee was appointed, and the applicant obtained a personal discharge. In December following, two permanent trustees were appointed, who did not give bonds with security. The applicant was reported against by the commissioners, and received no final discharge. Some time after this he died, and the provisional trustee was appointed his administrator. One of the two persons appointed permanent trustees also died, and the other removed from the State. *Baltimore* County Court, upon application of the creditors in 1829, appointed another permanent trustee, who gave bond with security. HELD, that the appointment was duly made, and that the administrator must deliver the property he received, as provisional trustee, to the permanent trustee.

APPEAL from *Baltimore* County Court.

This was an action of *Trover,* for sundry articles of merchandize, instituted by the appellant, against the appellee, on the 11th of March, 1830.

Issue was joined upon the plea of not guilty. Upon an admitted statement of facts, the County Court gave judgment for the defendant, when the plaintiff prosecuted the present appeal.

The judge, by whom the opinion of this court was delivered, stated all the material facts of the case as follows:

It appears, by the record before us and the various admissions it contains, that on the 4th of September, 1818, *Henry Fahnestock* made application to the *Baltimore* County Court, for the benefit of the insolvent laws of the State, which, according to the provisions of the act of 1816, *ch.* 221, on the construction of which this cause depends, was referred by that court, to the Commissioners of Insolvent Debtors for City and County of *Baltimore*. That on the 5th of September, 1818, the defendant was appointed by the commissioners a provisional trustee, and a personal discharge was regularly granted by *Baltimore* County Court, to the petitioner, *Fahnestock*. That on the 11th of December, 1818, *Isaac Burniston* and *William Scott*, were appointed permanent trustees in the room of the defendant, the provisional trustee, but that the petitioner, *Fahnestock*, failed to obtain a final discharge. That after the defendant was appointed provisional trustee, the petitioner, *Fahnestock*, died, and the defendant took out letters of administration upon his estate, on the 20th of October, 1829. That *Burniston* and *Scott*, the trustees appointed by the commissioners, having neglected to give bond and security, as required by the law, and *Burniston* having died, and *Scott* having left the State, and gone to *England*, the plaintiff, *Glenn*, was appointed a trustee in their room, by *Baltimore* County Court, on the 4th of November, 1829, upon the petition of certain creditors of *Fahnestock*, the petitioning debtor. That the defendant, as provisional trustee, obtained possession of, and sold a quantity of merchandize belonging to *Fahnestock*, the petitioner, for which this suit was brought, and that before the institution of the suit, the *plaintiff duly demanded from the defendant, the proper*ty he had received as provisional trustee, which he refused to deliver up.

The cause came on to be argued before BUCHANAN, Ch. J., and MARTIN, STEPHEN, and DORSEY, J.

*Frick*, for the appellant, contended.

1. *Karthaus* held the property of the insolvent *throughout*, as custodiary for the creditors, and the report of the commissioners against the insolvent could not affect the right of the creditors to the property, transferred by the applicant to the provisional trustee.

In other words, the property so transferred by the insolvent to the provisional trustee, could not on an unfavorable report of the Commissioners of Insolvent Debtors, revert to the applicant.

2. This special property or custody of *Karthaus*, *continued* until the constitution of a legally qualified permanent trustee, in whom the whole right of property now vests, for the benefit of the creditors of the insolvent.

3. The death of the insolvent, and the administration on his estate by the defendant, cannot change the relation of these parties. The one as provisional, the other as permanent trustee.

He referred in the argument to the acts of 1812, *ch.* 77, *sec.* 6. 1808, *ch.* 71, *sec.* 4. 1805, *ch.* 110, *sec.* 3, 16. *Kennedy vs. Boggs*, 5 *H. and J.* 408. *Glasgow vs. Sands*, 3 *Gill and Johns.* 96. The act of 1819, *ch.* 84, *sec.* 6. 1825, *ch.* 205, *sec.* 5. 1822, *ch.* 102. 1820, *ch.* 194, *secs.* 1, 2, 5. 6 *Harr. and Johns.* 383.

*Mayer*, for the appellee.

1. The appointment by the County Court, of the appellant as trustee, is invalid, the Commissioners of Insolvent Debtors having exclusive jurisdiction over such appointments. *Glasgow vs. Sands*, 3 *Gill and Johns.* 96. By the act of 1816, *ch.* 221, *sec.* 5, the County Court are only authorised to take cognizance of cases of insolvency, in the event of a favorable report by the commissioners. And by the act of 1819, *ch.* 84, *sec.* 6, the commissioners are not authorised to appoint a permanent trustee, after an unfavorable report, *a fortiori*, they cannot do so after the death of the petitioner.

It is not true, that a debtor is compelled absolutely to divest himself of all *interest* in his property, as a condition to the court's entertaining his petition for the benefit of the insolvent laws.   The mere application of the petitioner, and appointment of a provisional trustee, does not produce this effect under the act of 1816, though the possession of the property is changed; nor can the provisional trustee, institute suits in his own name, to recover any thing due the insolvent.   *Kennedy vs. Boggs*, 5 *Harr. and Johns.* 407. The power of either, the County Court or the commissioners, to appoint a permanent trustee, and the divesting of the insolvent of his property, depends upon the final discharge of the petitioner.   Act of 1805, *ch.* 110, *sec.* 2, 3, 5, 16.  1808, *ch.* 71.   1816, *ch.* 221.   1807, *ch.* 150, *sec.* 3.   *Brown vs. Brice*, 2 *Harr. and Gill*, 27.  Act of 1814, *ch.* 122.  1819, *ch.* 84, *sec.* 6.   And the insolvent ought not to be divested of his property before he is finally discharged; because as the application for relief under the insolvent laws, is altogether voluntary, the petitioner may, at any time previously thereto, withdraw his application, and his former responsibility to his creditors is at once revived.

Here however, the appointment of a permanent trustee did not take place until after the death of the petitioner, and the appointment of the appellee as his administrator.   By the death of the petitioner, the proceedings, upon his petition necessarily ceased.

*Johnson,* in reply.

The property vests in the trustee, before the final discharge of the insolvent.   It precedes, and is the consideration upon which the discharge is granted.   By the act of 1808, *ch.* 71, the insolvent's property vests in the trustee, immediately upon his appointment, and qualification, whether the insolvent is discharged or not.

The act of 1816, *ch.* 221, gives to the commissioners a discretion as to the time of appointing a permanent trustee, which must precede the final discharge, because it is after

such appointment that the discharge is granted by the court, on the report of the commissioners. There is nothing in any act of Assembly which countenances the idea, that the property can be divested out of the trustee, by any act of the insolvent after his application. It is not denied, that if after the final discharge is granted, allegations should be filed within two years, and found against the insolvent, that the property would not revert to him, because it had once vested in the trustee; and as the property equally vests, before the final discharge, the consequences must be the same, if for any reason his application for the benefit of the law should be unsuccessful. The law gives authority to the trustee, under the order of the court, at any time after his appointment, to sell the insolvent's property, which necessarily involves the idea of title in him.

2. This case occurred prior to the act of 1819, and of course is to be decided exclusively, upon the previous legislation. The act of 1816, declares, that all previous laws, upon the subject of insolvency, not inconsistent with it, remain in full force, and as before the act of 1816, the County Court had authority to appoint trustees, the question is, is that authority inconsistent with the act of 1816. It is conceded, that the court is not deprived of the power, when the report of the commissioners is favorable. By the 2d section of the act of 1816, the application for the benefit of the law is be made to the County Court, and the final action upon all applications is by it. That court never loses its control over these cases, from their commencement to their termination. If the construction on the other side is sound, then prior to the act of 1819, there was no authority to appoint a trustee, if the report of the commissioners should be unfavorable. The court could not, according to the argument, because of such report; and the commissioners could not, as is decided in *Glasgow vs. Sands*; and it would follow of course, that if the debtor acted fraudulently, his property could not be enjoyed by his creditors. He contended, that the report of the commissioners, whether favorable, or the reverse, re-

mitted the case to the County Court, for its further action. If favorable, the court, under the act of 1816, is bound to discharge—if not, it exercises a discretion on the subject, that being a power (not incompatible with the act of 1816,) which belonged to the court, in virtue of the previous legislation. The 3d section of the act of 1816, gives the commissioners authority to appoint a trustee in a single case only; and the act of 1819, which confers on them the general power, does not take it from the courts. Their jurisdiction over this subject is concurrent. The commissioners certainly, by the act of 1816, have no power to remove a trustee; though that power is confided to the court by the 4th *sec.* of the act of 1805; and being a highly beneficial power, and one which it cannot be supposed the legislature intended to abolish altogether, we must conclude, as it was not given to the commissioners by the act of 1816, that it was designed to leave it with the court, under the act of 1805. If the County Court had not the power to remove and appoint a new trustee, the power did not exist in *Baltimore.*

The death of the insolvent can make no difference. The trustee was appointed immediately upon his application, in whom the property vested, for the benefit of his *then* creditors, and being so vested, his subsequent creditors cannot be supposed to have trusted him upon his faith—and should the trustee, so appointed, fail to qualify, or be removed, the subsequent appointment of another, relates back to the application.

BUCHANAN, Ch. J., delivered the opinion of the court.

After adverting to the facts before set forth, the judge said, the question is, whether the plaintiff is entitled to recover in this action of *trover;* which depends upon the construction proper to be given to the insolvent laws.

The act of 1816, for the first time, introduces into the insolvent system, a provision for the appointment of a pro-

OF MARYLAND.                                                391

Glenn, Trustee of Fahnestock, *vs.* Karthaus.—1832.

visional trustee by Commissioners of Insolvent Debtors, appointed for the city and county of *Baltimore.*

This provisional trustee is always to be appointed, as was done in this case, before a personal discharge is granted to the petitioning debtor. He acquires no title to the property of the insolvent by his appointment, but is a mere custodiary, and takes possession of it for the benefit of the creditors; and on the report of the commissioners to the court, or a judge thereof, that he is in possession of all the property of the insolvent debtor, the court or judge grants to such debtor a personal discharge. After which it becomes the duty of the commissioners, having first given the requisite notices, and pursued the directions of the act, to appoint a trustee for the benefit of the creditors, (commonly called a permanent trustee) in whom, under the provisions of the system, all the property of the insolvent debtor in the possession of the provisional trustee, vests.

By the 5th *sec.* of the act of 1816, the commissioners are required to examine into the nature and circumstances of all such applications, and if it appears that the insolvent debtor has complied with all the terms and conditions of the insolvent laws, and has acted fairly, and *bona fide*, it is made their duty to report the same to *Baltimore* County Court, and to return the schedule, and all other proceedings had before them, to the office of the clerk of that court; upon which the judges are authorised to grant a final discharge.

It has been urged in argument, that under that act, the appointment of a permanent trustee by the commissioners, had reference to, and was in contemplation of a final discharge, and that if a petitioning debtor failed to obtain a final discharge, the whole proceedings fell to the ground, and it was as if there had been no application, and the property which had vested in the permanent trustee, reverted to the petitioning debtor.

If that were so, *Fahnestock*, the petitioning debtor in this case, having failed to obtain a final discharge, his property,

of which the defendant had obtained and held possession, as provisional trustee, ceased to be held by him in that capacity, for the benefit of the creditors; but upon his taking out letters of administration, on the death of *Fahnestock,* he held it in the character of administrator.

But it is not considered that the appointment of a permanent trustee under that act was made with reference to, and in contemplation of a final discharge, to have effect or not, as the petitioning debtor might or might not prove to be successful in his application; but as being perfectly independent of it, being made anterior to the examination and report of the commissioners, upon which the final discharge was granted, and the policy of the law being (to prevent frauds, and in consideration of the personal discharge) to secure the property of the petitioning debtor for the benefit of the creditors, whether finally discharged or not, by causing it to vest for that purpose in the permanent trustee, and that investiture for the benefit of the creditors, in consideration of the relief from the pain of imprisonment by the personal discharge, could not be divested by the subsequent failure of the petitioning debtor to obtain a final discharge. As well may it be said, that where an insolvent debtor is convicted upon allegations filed by his creditors after a final discharge, the property remaining in the hands of the trustee reverts to him, because he is thereby deprived of all benefit of the insolvent laws, there being no difference in effect between the failing to obtain a final discharge, and the being deprived of the benefit of such discharge.

It is affirmed by this court, in *Glasgow vs. Sands,* 3 *Gill and Johns.* 96, to have been the duty of the commissioners under the act of 1816, first to appoint a provisional, and then a permanent trustee, and after having done so, to examine into the circumstances of the application, and if it should appear that the petitioning debtor had complied with the terms of the insolvent laws, and acted fairly and *bona fide,* to report, &c. to the court, whereupon the final discharge was authorised to be granted, and that is clearly the

law; so that, as the permanent trustee was to be appointed before any examination into the conduct of the petitioner, and when the commissioners could not have known what would be the result of their examination, or whether the petitioner would be able to show himself entitled to a favorable report, the appointment could not be considered as being made with reference to a final discharge, upon which its efficacy was to depend; but when a petitioner obtained his personal discharge, and transferred his property, and surrendered up the possession to the provisional trustee, (who was appointed in contemplation of a permanent trustee to be nominated by the creditors,) he parted with all control over it, and ceased to have any interest in it, except so far as related to any surplus that might remain after payment of the debts; and the provisional trustee took and held it as a custodiary for the benefit of the creditors, until the appointment and qualification of a permanent trustee, in whom it vested. When, therefore, *Fahnestock*, the petitioning debtor in this case, obtained his personal discharge, he ceased, rightfully, to have any thing to do with the property in the hands of the defendant, the provisional trustee, whose duty it was to keep and preserve it for the benefit of the creditors, until there should be an appointment and qualification of a permanent trustee; and that custody of it was not affected, either by the failure of *Fahnestock* to obtain a final discharge, or by his subsequent death; but the defendant continued to hold the property in his character of provisional trustee, notwithstanding he afterwards became the administrator of *Fahnestock*, the property not having vested in *Burniston and Scott*, the persons appointed by the commissioners as permanent trustees, they having neglected to give bond and security as required by law.

The only question remaining, therefore, is, whether *Glenn*, the plaintiff, was properly appointed permanent trustee, at the instance of creditors, by *Baltimore* County Court. The act of 1816 gave no exclusive authority to the commissioners, in such a case, to appoint another trustee; and if the

Glenn, Trustee of Fahnestock, *vs.* Karthaus.—1832.

power to make such an appointment resided neither in the commissioners, nor the County Court, yet the property did not therefore revert to *Fahnestock*, but Chancery might have extended its aid to the creditors, and have appointed a trustee for their benefit, to take and make a proper disposition of the property.

But we think the *Baltimore* County Court had full power to make the appointment it did, and that *Glenn* having given bond and security as required by law, the property vested in him.   The act of 1816, giving to the commissioners the power to appoint, first, a provisional, and then a permanent trustee, in relation to the city and county of *Baltimore*, operated as a repeal of so much of the act of 1805, *ch.* 110, as gave to the *Baltimore* County Court the power, in the first instance, to appoint a trustee. But the act of 1816, not giving to the commissioners, on the refusal to act, the death, or neglect, of the permanent trustee appointed by them to give bond, the power to appoint another, or the power to remove for misbehavior such a trustee, and to appoint another in his place, it only took from the County Court the power of *appointment in the first instance;* and being a part of the same system, to be taken altogether, the appointment by the commissioners took the place of the appointment by the court, leaving the power of the court to substitute another trustee in the place of one before appointed, in either of the events enumerated, the same in relation to an original appointment by the commissioners, that it before possessed in relation to an original appointment made by the court, just as if the act of 1816 had been originally introduced into the act of 1805, as a special provision for the city and county of *Baltimore*.   The judgment of the court below must, therefore, be reversed.

**JUDGMENT REVERSED AND PROCEDENDO AWARDED.**